IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br>vs.<br>HOBERT RUPE,<br>Defendant. | 4:25CR3083<br>PLEA AGREEMENT |

IT IS HEREBY AGREED between the plaintiff, United States of America, through its counsel, Lesley A. Woods, United States Attorney and Julie Ann M. Mruz, Assistant United States Attorney, and defendant, Hobert Rupe, and Bill McGinn, counsel for defendant, as follows:

**I**

**THE PLEA**

A. CHARGE(S) & FORFEITURE ALLEGATION(S).

Defendant agrees to plead guilty to Count I and Count VIII of the Superseding Indictment. Count I charges a violation of Title 18, United States Code, Sections 1349 & 1346. Count VIII charges a violation of Title 18, United States Code, Section 1951.

B. In exchange for the defendant's pleas of guilty as indicated above, the United States agrees as follows:

1. The United States will move to dismiss Counts II, III, IV, V, VI, and VII of the Superseding Indictment at the time of sentencing, as it relates to defendant Hobert Rupe.
2. The United States will move to dismiss the Indictment as it relates to defendant Hobert Rupe at the time of sentencing.
3. The United States agrees that the defendant will not be federally prosecuted in the District of Nebraska for further wire fraud and honest services fraud crimes as disclosed by the discovery material delivered to the defendant's attorney as of the date this agreement is signed by all parties, other than as set forth in paragraph A, above. This agreement not to prosecute the defendant for specific crimes does not

prevent any prosecuting authority from prosecuting the defendant for any other crime, or for any crime involving physical injury or death.

## II

## NATURE OF THE OFFENSE

A. ELEMENTS EXPLAINED.

Defendant understands that the offense to which defendant is pleading guilty has the following elements:

***Count I: Honest Services Fraud Conspiracy***

1. Defendant knowingly devised or participated in a scheme to defraud the public of its right to the honest services of Hobert Rupe through bribery or kickbacks;
2. Defendant did so knowingly and with an intent to defraud;
3. The scheme or artifice to defraud involved a material misrepresentation, false statement, false pretense, or concealment of fact; and
4. In advancing, furthering, or carrying out the scheme to defraud, the defendant transmitted, or caused to be transmitted, any writing, signal, or sound by means of a wire communication in interstate or foreign commerce.

***COUNT VIII: Hobbs Act Extortion Under Color of Official Right***

1. The Defendant obtained property from another with that person's consent
2. Under color of official right
3. In such a way as to interfere with or affect interstate commerce.

B. ELEMENTS UNDERSTOOD AND ADMITTED - FACTUAL BASIS.

Defendant has fully discussed the facts of this case with defense counsel. Defendant has committed each of the elements of the crime and admits that there is a factual basis for this guilty plea. The following facts are true and undisputed.

The Liquor Commission is responsible for regulating and controlling the alcoholic beverage industry and alcoholic beverages located within and transported into the State of Nebraska in an efficient, effective manner to promote public health, safety and welfare. The Liquor Commission oversees various tavern violations and the assignment of the corresponding penalties, but it also reserves the option to deviate from the penalty guidelines to encourage voluntary compliance with the Liquor Control Act and its regulations. The Executive Director is appointed by the commissioners. The Executive Director is responsible for enforcing the liquor

laws and presenting any possible violations of those laws to the Liquor Commissioners. The Executive Director keeps track of all proceedings, transactions, communications, and official acts of the Liquor Commission. The Executive Director is also the custodian of all records and performs such other duties as the commission may prescribe. It is illegal for the Executive Director of the Liquor Control Commission to accept any gift or gratuity from any person subject to the Nebraska Liquor Control Act, pursuant to Neb. Rev. Statute §53-111.

Defendant, Hobert Rupe ("Rupe"), was appointed as the Executive Director of the Nebraska Liquor Control Commission in December 2003 and continuously held this position until his resignation of June 2025.

The Office Gentleman's Club is a bar and strip club owned by co-defendant Brent Zywiec, co-defendant Dan Thomas, Steve Stevenson, and Brooke Ciurej. These four owners also shared ownership of another bar and strip club in Lincoln, Nebraska, called The Night Before Lounge. In May of 2024, there was a double homicide that occurred at The Office Gentleman's Club in Lincoln, Nebraska. Through the homicide investigation, investigators with the Lincoln Police Department were able to review surveillance video. Investigators located footage of Rupe on April 26, 2024, receiving a bundle of cash under the table from co-defendant Brent Zywiec in the business office. Surveillance footage reflects that a few minutes later, Rupe was in private room receiving a dance he paid for with an unknown amount of cash he had just received.

The investigation revealed numerous occasions where co-defendants Brent Zywiec and Dan Thomas would provide Rupe with cash, sexual acts performed on Rupe by dancers, and other accommodations at The Office and The Night Before Lounge such as free private dances, free VIP dances, a waiver of any cover charge and free alcoholic beverages. Often, Rupe would use the cash provided to pay dancers at The Office and The Night Before for private and/or VIP dances.

Employees at The Office kept track of the cash provided to Rupe that was expensed by the business to influence Rupe over time in the performance of his official duties. This was done by utilizing a system in which sticky notes were used to indicate the amount of money taken out of the business safe and provided to Rupe. These sticky notes would have "COB" written on them, which stood for "cost of business," along with the dollar amount.

Co-defendants Brent Zywiec and Dan Thomas would also send various items of value to Rupe, such as photos of the dancers, identifying information on the dancers, and the dancers'

schedule for working at The Office and/or The Night Before. Rupe used the identifying information on the dancers to look up the females in the Nebraska Criminal Justic Information System, a law enforcement database he had access to as part of his employment as the Executive Director, to gain inside knowledge about the individuals. These searches exceeded Rupe's lawful use of the Nebraska Criminal Justice Information System. The dancers' schedule was valuable to Rupe as he utilized it to know when to go to The Office and/or The Night Before so he could have access to his favorite dancers.

Rupe was never required to pay a cover charge on any of the hundreds of times he went to The Office and/or The Night Before. He also received free beverages. Communications between Zywiec, Thomas and Rupe included discussions about when Rupe would be going to one of the clubs. The group used code words to include discussions of "team players" in reference to dancers that were willing to participate in sexual activities with Rupe, and "book" or "papers" were code for cash to be provided to Rupe by employees of either club. At one point in time, Rupe received oral sex from a dancer at The Office, a recording of which was retained by Zywiec after being saved from the surveillance video system at The Office.

In exchange for these benefits, Rupe utilized his official capacity as Executive Director to materially influence the justice system in Nebraska, effectively protecting The Office and The Night Before from law enforcement while simultaneously targeting investigations towards the clubs' business competitors. The plans between co-defendant Brent Zywiec, co-defendant Dan Thomas, and Rupe were intended to bring in increased revenues for The Office and/or The Night Before.

Rupe was consistently in communication with the Nebraska Attorney General's Office referring allegations of criminal activity occurring at competitive clubs for investigation and prosecution. As a result of Rupe's referrals to the Attorney General's Office, undercover investigators from the Nebraska Attorney General's Office and the Nebraska State Patrol conducted operations where they entered the competitor establishments and observed criminal violations being committed within the clubs. Rupe passed along sensitive law enforcement investigative techniques and plans to co-defendants Brent Zywiec and/or Dan Thomas to ensure law enforcement was actively investigating competitor clubs. At the same time, Rupe witnessed, knew of, and participated in various violations and illegal activities occurring at The Office

and/or The Night Before that went unreported to law enforcement, thus avoiding any citations that law enforcement may have issued to The Office and/or The Night Before.

In June of 2025, an individual by the name of Tony Pham spoke with law enforcement. At that time, he was the owner of Krush Ultra Lounge in Omaha, Nebraska. He explained how in 2021, he made a $40,000 payment in order to maintain his liquor license at his club, Throwback Lounge. After playing a poker game with co-defendant Shane Zywiec ("S. Zywiec") and sharing his struggles with his bar, S. Zywiec indicated he could help Pham as he had a contact at the Liquor Control Commission. At S. Zywiec's direction, Pham downloaded Threema, an encrypted communication application, to discuss further the liquor license issues. Pham was also told he would receive a phone call from a number with no caller ID and that he should answer.

Before the first hearing set by the Liquor Control Commission, Pham received a phone call from an individual with instructions on how the hearing would proceed and how he should conduct himself during the hearing. Pham also received directions on where to take a $40,000 payment in order to keep his liquor license. Pham proceeded as instructed to a gas station off of Interstate 80 between Lincoln and Omaha, met an individual by the name of Mark Hannaway and paid him the $40,000 in cash. Hannaway paid part of the $40,000 to Brent Zywiec and part was eventually paid to Rupe by Zywiec. After making this payment, Pham did not have further issues with the Nebraska Liquor Control Commission.

With the help of S. Zywiec, Zywiec, and Rupe, Pham went on to pay an additional $20,000 to Hannaway and $5,000 to the defendant when his club's liquor license was at risk for a second time in 2023. Pham explained that the Omaha City Council denied Pham's club long form application for his liquor license. The denial was then appealed to the Nebraska Liquor Control Commission. Pham then had contact with S. Zywiec again about his license. Pham received another restricted phone call requesting another $40,000. Pham was only able to pay $20,000 and an additional $5,000 at a later date. Pham made the first $20,000 payment to Hannaway in the same manner and location as he had in 2021. He then paid the additional $5,000 to the defendant after the second hearing in front of the Liquor Control Commission and Pham's application was approved. However, the Liquor Control Commission did modify Throwback Lounge's closing time from 2:00 am to 1:00 am.

Finally, in January 2024, Pham attempted to extend his club's hours to 1:30 am. Twice, Pham was denied by the Liquor Control Commission. Around this time, Pham was rebranding his club to be re-named Krush Ultra Lounge. Two weeks before the re-opening, Pham received

another call from a restricted number requesting $40,000. Pham was unable to pay any amount at this time as he had spent all available funds on his rebrand. The caller indicated that since Pham did not pay, the caller could not control what happened and that he could no longer help Pham. Almost immediately upon re-opening, Pham's club began to receive tavern reports from law enforcement. Ultimately, Pham ended up surrendering his liquor license and Krush Ultra Lounge closed after not being able to pay any further extortion payments to S. Zywiec, Rupe or Brent Zywiec.

**III**

**PENALTIES**

A. COUNTS I and VIII. Defendant understands that the crimes to which defendant is pleading guilty both carry the following penalties:

1. A maximum 20 years in prison;
2. A maximum $250,000 fine;
3. A mandatory special assessment of $100 per count;
4. A term of supervised release of not more than 3 years. Defendant understands that failure to comply with any of the conditions of supervised release may result in revocation of supervised release, requiring defendant to serve in prison all or part of the term of supervised release; and
5. Possible ineligibility for certain Federal benefits.

**IV**

**AGREEMENT LIMITED TO U.S. ATTORNEY'S OFFICE**
**DISTRICT OF NEBRASKA**

This plea agreement is limited to the United States Attorney's Office for the District of Nebraska, and cannot bind any other federal, state or local prosecuting, administrative, or regulatory authorities.

## V

## SENTENCING ISSUES

A. SENTENCING AGREEMENTS.

Although the parties understand that the Guidelines are advisory and only one of the factors the court will consider under 18 U.S.C. § 3553(a) in imposing a sentence, the parties will jointly stipulate to the following specific offense characteristic enhancement and acceptance of responsibility reduction. Unless otherwise stated, all agreements as to sentencing issues are made pursuant to Federal Rule of Criminal Procedure 11(c)(1)(B).

1. If the defendant is found to be entitled to an offense level reduction under U.S.S.G. 3E1.1(a) for acceptance of responsibility, the United States hereby moves that the court reduce the defendant's offense level by one additional level, pursuant to U.S.S.G. § 3E1.1(b), if that paragraph otherwise applies.
2. The parties agree a to a six-level enhancement pursuant to U.S.S.G. § 2C1.1(b)(2) and § 2B1.1(b)(1), as the value of the benefits received by the defendant exceeded $40,000.

B. ACCEPTANCE OF RESPONSIBILITY.

Notwithstanding paragraph A above, the United States will not recommend any adjustment for Acceptance of Responsibility if defendant:

1. Fails to admit a complete factual basis for the guilty plea at the time it is entered, or
2. Denies involvement in the offense, gives conflicting statements about that involvement, or is untruthful with the court or probation officer, or
3. Fails to appear in court, or
4. Engages in additional criminal conduct, or
5. Attempts to withdraw the guilty plea, or
6. Refuses to abide by any lawful court order, or
7. Contests or assists any third party in contesting the forfeiture of property(ies)seized or forfeited in connection with this case.

**The parties further agree the defendant will make no "blanket" objections to the criminal history calculation (specific objections based on stated grounds are permitted). Objections to criminal history on the basis that the defendant was not the person who was convicted of the offense(s) described in the presentence investigation report or on the basis that the defendant was not represented by counsel in connection with such conviction(s), if**

**determined to be unfounded, are evidence the defendant has not accepted responsibility and the parties agree no credit for acceptance of responsibility should be given.**

C. ADJUSTMENTS, DEPARTURES & REDUCTIONS UNDER 18 U.S.C. § 3553.

The parties agree that defendant may request or recommend additional downward adjustments, departures, including criminal history departures under U.S.S.G. § 4A1.3, and sentence reductions under 18 U.S.C. § 3553(a), and that the United States will oppose any such downward adjustments, departures, and sentence reductions not set forth in Section V, paragraph A above.

D. CRIMINAL HISTORY.

The parties have no agreement concerning the defendant's Criminal History Category, except that if defendant is determined to be a Career Offender, the parties agree that the defendant is automatically a Criminal History Category VI pursuant to U.S.S.G. § 4B1.1(b).

E. "FACTUAL BASIS" AND "RELEVANT CONDUCT" INFORMATION.

The parties agree that the facts in the "factual basis" paragraph of this agreement, if any, are true, and may be considered as "relevant conduct" under U.S.S.G. § 1B1.3 and as the nature and circumstances of the offense under 18 U.S.C. § 3553(a)(1).

The parties agree that all information known by the office of United States Pretrial Service may be used by the Probation Office in submitting its presentence report and may be disclosed to the court for purposes of sentencing.

F. RECOMMENDATION REGARDING CUSTODY.

The United States will recommend that defendant be sentenced to the low end of the advisory guideline range as calculated by the Court pursuant to this agreement.

## VI

## DEFENDANT WAIVES APPEAL AND COLLATERAL ATTACK

The defendant hereby knowingly and expressly waives any and all rights to appeal the defendant's conviction and sentence, including any restitution order in this case, and including a waiver of all motions, defenses, and objections which the defendant could assert to the charges or to the Court's entry of Judgment against the defendant, and including review pursuant to 18 U.S.C. § 3742 of any sentence imposed, except:

(a) As provided in Section I above, (if this is a conditional guilty plea); and

(b) A claim of ineffective assistance of counsel.

(c) A right to file a motion under Section 3582(c)(1)(A);

1. the general right to file a compassionate release motion;
2. the right to file a second or successive such motion; or
3. the right to appeal the denial of a compassionate release.

The defendant further knowingly and expressly waives any and all rights to contest the defendant's conviction and sentence in any post-conviction proceedings, including any proceedings under 28 U.S.C. § 2255, except:

(a) The right to timely challenge the defendant's conviction and the sentence of the Court should the Eighth Circuit Court of Appeals or the United States Supreme Court later find that the charge to which the defendant is agreeing to plead guilty fails to state a crime.

(b) The right to seek post-conviction relief based on ineffective assistance of counsel.

If defendant breaches this plea agreement, at any time, in any way, including, but not limited to, appealing or collaterally attacking the conviction or sentence, the United States may prosecute defendant for any counts, including those with mandatory minimum sentences, dismissed or not charged pursuant to this plea agreement. Additionally, the United States may use any factual admissions made by defendant pursuant to this plea agreement in any such prosecution.

## VII

## BREACH OF AGREEMENT

Should it be concluded by the United States that the defendant has committed a crime subsequent to signing the plea agreement, or otherwise violated this plea agreement, the defendant shall then be subject to prosecution for any federal, state, or local crime(s) which this agreement otherwise anticipated would be dismissed or not prosecuted. Any such prosecution(s) may be premised upon any information, statement, or testimony provided by the defendant.

In the event the defendant commits a crime or otherwise violates any term or condition of this plea agreement, the defendant shall not, because of such violation of this agreement, be allowed to withdraw the defendant's plea of guilty, and the United States will be relieved of any obligation it otherwise has under this agreement and may withdraw any motions for dismissal of charges or for sentence relief it had already filed.

## VIII

## SCOPE OF AGREEMENT

A. This plea agreement embodies the entire agreement between the parties and supersedes any other agreement, written or oral.

B. By signing this agreement, the defendant agrees that the time between the date the defendant signs the agreement and the date of the guilty plea will be excluded under the Speedy Trial Act. The defendant stipulates that such period of delay is necessary in order for the defendant to have opportunity to enter the anticipated plea of guilty, and that the ends of justice served by such period of delay outweigh the best interest of the defendant and the public in a speedy trial.

C. The United States may use against the defendant any disclosure(s) the defendant has made pursuant to this agreement in any civil proceeding. Nothing contained in this agreement shall in any manner limit the defendant's civil liability which may otherwise be found to exist, or in any manner limit or prevent the United States from pursuing any applicable civil remedy, including but not limited to remedies regarding asset forfeiture and/or taxation.

D. Pursuant to 18 U.S.C. § 3013, the defendant will pay to the Clerk of the District Court the mandatory special assessment of $100 for each felony count to which the defendant pleads guilty. The defendant will make this payment at or before the time of sentencing.

E. By signing this agreement, the defendant waives the right to withdraw the defendant's plea of guilty pursuant to Federal Rule of Criminal Procedure 11(d). The defendant may only withdraw the guilty plea in the event the court rejects the plea agreement pursuant to Federal Rule of Criminal Procedure 11(c)(5). Furthermore, defendant understands that if the court rejects the plea agreement, whether or not defendant withdraws the guilty plea, the United States is relieved of any obligation it had under the agreement and defendant shall be subject to prosecution for any federal, state, or local crime(s) which this agreement otherwise anticipated would be dismissed or not prosecuted.

F. This agreement may be withdrawn by the United States at any time prior to its being signed by all parties. Further, this proposed plea agreement is automatically withdrawn if the properly executed original agreement is not received on or before at least three weeks prior to the start of any trial set in this matter.

## IX

## MODIFICATION OF AGREEMENT MUST BE IN WRITING

No promises, agreements or conditions have been entered into other than those set forth in this agreement, and none will be entered into unless in writing and signed by all parties.

## X

## DEFENDANT AND COUNSEL FULLY UNDERSTAND AGREEMENT

By signing this agreement, defendant certifies that defendant read it (or that it has been read to defendant in defendant's native language). Defendant has discussed the terms of this agreement with defense counsel and fully understands its meaning and effect.

UNITED STATES OF AMERICA,
Plaintiff

LESLEY A. WOODS
United States Attorney
District of Nebraska

10/28/26
Date

JULIE ANN M. MRUZ
ASSISTANT U.S. ATTORNEY

10-28-26
Date

HOBERT RUPE
DEFENDANT

10-28-26
Date

BILL MCGINN
COUNSEL FOR DEFENDANT